**FILED**
**Jan 23, 2020**
**06:49 AM(CT)**
**TENNESSEE**
**WORKERS' COMPENSATION**
**APPEALS BOARD**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Kelly Gautreaux | ) | Docket No.  2018-06-0366 |
| | ) | |
| v. | ) | State File No. 11346-2017 |
| | ) | |
| Hermitage Hall, et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Joshua D. Baker, Judge | ) | |

---

## Affirmed in Part, Vacated in Part, and Remanded

---

In this second interlocutory appeal in this case, the employee alleged she suffered injuries as a result of physical altercations occurring at work.  Following the initial expedited hearing, the employer was ordered to provide psychiatric treatment recommended by the authorized physician and to pay additional temporary disability benefits.  That order was appealed, and we affirmed.  After the employer provided a panel of psychiatrists whose practices were not located in the employee's community of residence, the employee declined to choose a physician from the panel and requested that the court order the employer to either provide a panel of psychiatrists within her community or appoint as the authorized provider the psychiatrist the employee had retained to provide an evaluation.  Following a hearing, the trial court concluded the panel offered by the employer was invalid and mandated that the employer authorize the psychiatrist selected by the employee as the treating psychiatrist.  The employer has appealed.  We vacate the trial court's decision designating the authorized psychiatrist and remand the case.

Presiding Judge Timothy W. Conner delivered the opinion of the Appeals Board in which Judge David F. Hensley joined.  Judge Pele I. Godkin did not participate.

Chris R. Brooks and Gregory H. Fuller, Brentwood, Tennessee, for the employer-appellant, Hermitage Hall

Zachary D. Wiley, Nashville, Tennessee, for the employee-appellee, Kelly Gautreaux

**Factual and Procedural Background**

This is the second interlocutory appeal of this case. We previously issued an opinion on March 12, 2019, containing the factual history of the case, which we adopt in relevant part as set out below:

Kelly Gautreaux ("Employee"), a twenty-seven-year-old resident of Nashville, Tennessee, worked as a mental health aid for Hermitage Hall ("Employer") in its residential treatment facility for teenagers. In January 2017, Employee was "punched in the head multiple times" when she attempted to break up an altercation between two residents. She notified her supervisor and was sent to a local hospital for medical attention where she was diagnosed with "concussion and post-concussion syndrome." She was taken out of work for two days, after which she said her symptoms subsided and she returned to work.

On February 5, 2017, an altercation occurred in the facility when some residents who had gathered in the gym to watch the Super Bowl began assaulting other residents and staff members. In an expedited hearing, Employee testified that, in an attempt to restrain one of the female residents, she was "kicked in the forehead." She stated she had no immediate memory of getting kicked, but that her supervisor saw it happen. She testified that, after order was restored, she returned to her unit with her group of residents, which included the individual who had kicked her. Further, she testified that as she "was looking down [at documents] and just ensuring that all of the residence were there in their rooms, this same female patient that had kicked [her] in the forehead" came out of her room and "tackled [her]." She stated the resident grabbed her hair and repeatedly punched her in the head while dragging her approximately ten feet across the floor. Employee immediately sought medical attention at Nashville General Hospital. A CT scan of Employee's head was normal and she was discharged with a diagnosis of concussion. The report of Employee's emergency department visit did not note any specific neurological abnormalities.

. . . .

Employer provided a panel of physicians from which Employee selected Dr. Garrison Strickland, a neurologist, as her treating physician. At her initial visit on March 1, 2017, Dr. Strickland noted Employee's history of the workplace incidents and her preexisting history of sports-related concussions and depression. Dr. Strickland's impression, noted in the initial report, was that Employee "ha[d] headache, dizziness and

2

cognitive complaints following mild closed head injury." He noted that Employee "had multiple prior head injuries by history." He recommended an MRI of the brain "to evaluate for lesions that may not have been seen on CT," and he requested an EEG "because of [Employee's] memory complaints to evaluate for encephalopathy." He also recommended vestibular rehabilitation "[f]or treatment of dizziness," Neurontin to treat Employee's headaches, and he assigned work restrictions.

. . . .

Employee's last visit with Dr. Strickland occurred on August 10, 2017. At that visit, she reported there was "no change in her symptoms of headache, dizziness and cognitive complaints." Dr. Strickland noted Employee had been seen by Dr. Schwaber "who diagnosed migrainous vertigo and [right] ear inner dysfunction." He also noted that "[n]europsych testing by Dr. Barclay showed no evidence of brain injury but did show problems with postconcussion syndrome for which Dr. Barclay recommended psychotherapy, psychiatric care and consideration of additional therapy at Pi Beta Phi or Tennessee Rehabilitation Services." In Dr. Strickland's report, he stated that he "defer[s] to Dr. Schwaber with respect to restrictions related to balance difficulties and [inner] ear injury." Dr. Strickland referred Employee to "Dr. Jeff Anderson for [p]sychiatric care and to Julie Johnson for [p]sychotherapy per Neuropsych testing recommendations." He deferred to "these postconcussion experts with respect to [the] need for additional therapy at Pi Beta Phi or Tennessee Rehabilitative Services." He also deferred "to these experts with respect to [maximum medical improvement] and [permanent partial impairment]," noting that Employee "will continue to see Dr. Schwaber for dizziness." Finally, he indicated Employee was to be "[o]ff work until seen by Psychiatry."

. . . .

At her attorney's request, Employee was seen for a psychiatric evaluation by Dr. Greg Kyser. Dr. Kyser's report noted Employee's long-standing and preexisting history of cognitive disorder associated with multiple contusions and her preexisting difficulties with depression, anxiety, and substance abuse. The report stated that Employee's preexisting history of concussions "puts her at enhanced risk for further traumatic brain injury." Dr. Kyser concluded in his report that Employee's level of functioning deteriorated following the February 2017 workplace incident, "which is directly related to her work injury." The report stated that Employee had been referred to the "cognitive rehabilitation program at

3

Pi Beta Phi," adding that "this has not been authorized." Because Employee had not been able to participate in this program, Dr. Kyser concluded Employee "is not yet at [MMI]."

. . . .

Dr. Kyser was questioned repeatedly [during his deposition] concerning Employee's preexisting post-concussive syndrome, loss of functionality resulting from prior brain injuries, and cognitive problems. He testified that "patients that have repeated concussions are more prone to have more concussions; more difficulties; more prolonged course, you know; and ultimately . . . down the road, maybe even, you know, more difficulties." When asked his opinion about Dr. Graham's report stating that typically, "a patient will have improvement from a head injury with no loss of consciousness within two to three months," Dr. Kyser testified that "[what] he's describing is kind of a typical case, and I think [Employee's is] anything but a typical case of someone with a mild head injury."[1]

As a result of the first expedited hearing, the trial court found Employee presented sufficient evidence that she is likely to prevail at a final hearing and ordered Employer to provide temporary total disability benefits and psychiatric treatment as recommended by Dr. Strickland. Employer appealed that order, which we affirmed.

Thereafter, as a result of Employer's difficulties identifying local psychiatrists to include on a panel, the parties filed a joint motion advising the court of the obstacles Employer had encountered in complying with the court's order, and they agreed to an order allowing Employer an additional fifteen days to provide a panel of psychiatrists.[2] Employer provided a panel of psychiatrists on April 3, 2019, none of whose practices were located in Employee's community of residence. Employee declined to select a psychiatrist from this panel and subsequently filed a second request for expedited hearing asking that the court either order Employer to provide a new panel of psychiatrists in Employee's community or designate Dr. Kyser as the authorized psychiatrist.

During the hearing, the parties stipulated that, "as of March 19, 2019, Employer had contacted 28 psychiatrists in an attempt to assemble a panel for [Employee] but had been unsuccessful." They also stipulated that a panel "was sent to counsel for [Employee] on April 3, 2019." Employee testified that she resided in the Nashville metropolitan area and that the panel Employer provided consisted of three Tennessee psychiatrists located in Memphis, Oak Ridge, and Cleveland. She testified that she

---

[1] *Gautreaux v. Hermitage Hall*, No. 2018-06-0366, 2019 TN Wrk. Comp. App. Bd. LEXIS 12, at *2-16 (Tenn. Workers' Comp. App. Bd. Mar. 12, 2019) (footnote omitted).

[2] The order was not included in the record on appeal.

declined to select a psychiatrist from the panel because none of the listed psychiatrists were within her community of residence and she was unable to travel the distances required to reach the psychiatrists without difficulties. Employer offered no proof as to the availability of psychiatrists in Employee's community beyond the stipulation that it had contacted 28 psychiatrists in an attempt to assemble a panel. Moreover, Employer offered no proof as to the distances from Employee's community of residence to the offices of the psychiatrists included on the panel.

In response to Employee's request for relief, Employer argued during the hearing that the authorized treating physician, Dr. Strickland, had issued a more recent opinion addressing whether the need for psychiatric treatment was causally related to the work incidents. Based on Dr. Strickland's more recent opinion, Employer asserted that Employee was no longer entitled to authorized psychiatric treatment regardless of its efforts to provide a panel of specialists. In response, Employee asserted that the sole purpose of the expedited hearing was to compel enforcement of the court's earlier order that a psychiatric panel be provided or to have Dr. Kyser designated as the authorized psychiatrist.

Following the hearing, the trial court issued an order in which it: (1) weighed Dr. Strickland's more recent causation opinion against opinions expressed by Dr. Kyser; (2) concluded that Dr. Kyser's opinions were more persuasive; (3) concluded the panel offered by Employer was invalid; and (4) ordered Employer to authorize psychiatric care with Dr. Kyser. Employer has appealed.

**Standard of Review**

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2019). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to factual findings made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). However, "[n]o similar deference need be afforded the trial court's findings based upon documentary evidence." *Goodman v. Schwarz Paper Co.*, No. W2016-02594-SC-R3-WC, 2018 Tenn. LEXIS 8, at *6 (Tenn. Workers' Comp. Panel Jan. 18, 2018). Similarly, the interpretation and application of statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2019).

## Analysis

In its brief on appeal, Employer identified three issues, which we have restated as follows: (1) whether the trial court erred in failing to consider Tennessee Code Annotated section 50-6-204(h) in weighing the expert opinions of Dr. Strickland and Dr. Kyser; (2) whether the trial court erred in considering Dr. Kyser's opinions because they were not admitted into evidence at the expedited hearing; and (3) whether the trial court erred in ordering authorized treatment with Dr. Kyser. Employee identified two issues in its brief: (1) whether the trial court erred in concluding that the panel offered by Employer was invalid; and (2) whether Employer's appeal is frivolous.

Initially, we note that the expedited hearing was conducted to address Employee's request that the court order Employer to either provide a panel of psychiatrists in Employee's community of residence or designate Dr. Kyser as the authorized psychiatrist. During preliminary discussions between the attorneys and the court, Employee's counsel stated: "Just for clarity of the record on appeal, we're relying on [Employee's] affidavit, her Rule 72 [declaration] in support of the expedited hearing in which she explains that – the issues with the panel and asks for a new panel in her community or for Dr. Kyser to be designated as the authorized treating physician. That's all."[3]

Employer did not object to this characterization of the purpose of the hearing. It did not specifically request relief from the court's previous order, did not file a motion to alter or amend the previous order, and did not file a new request for an expedited hearing to present the more recent causation opinions expressed by Dr. Strickland. Instead, Employer argued that Dr. Strickland effectively rescinded his recommendation that Employee receive psychiatric care and that his more recent opinions expressed in response to Employer's medical questionnaire established that Employee's current need for psychiatric care was not causally related to the work incidents. Based on these arguments, Employer asserted the court should deny Employee's request for a new panel of physicians and/or for the appointment of Dr. Kyser as an authorized provider. Alternatively, Employer argued in closing that if the court determined Employee still needed psychiatric care, Employee was not entitled to "either a panel of Nashville area psychiatrists or authorization of care with Dr. Kyser."

In its order, the trial court noted that the expedited hearing was convened to address Employee's request for "treatment from either Nashville-area psychiatrist Dr. Greg Kyser or a panel of psychiatrists within her community from [which] she could select a psychiatrist." However, the trial court's analysis focused primarily on the expert

---

[3] Employee's Rule 72 Declaration, admitted during the hearing as Exhibit 2, identified the issue as whether the Employer must provide a new panel of psychiatrists and/or whether the court should order that Dr. Kyser be the authorized treating psychiatrist.

opinions, and the court stated that Dr. Strickland's more recent causation statement "puts his opinion directly at odds with Dr. Kyser's." The court weighed the opinions of Dr. Strickland and Dr. Kyser, concluded that "the pertinent factors all mitigate in favor of the opinion of Dr. Kyser," and "credit[ed] Dr. Kyser's opinion on necessary treatment over Dr. Strickland's." Addressing the panel of psychiatrists Employer provided, the court referenced section 50-6-204(a)(3)(B), stating that providers "cannot practice further than 125 miles from the employee's home." The court determined the panel was "invalid," stating "[t]he panel provided to [Employee] contained psychiatrists who practice more than 125 miles from her home." Against that background, the court stated that it had "ordered [Employer] to provide [Employee] psychiatric treatment," that Employer "attempted to assemble a valid panel but failed," and that Employer "attempted to 'undo' Dr. Strickland's treatment recommendation." Based on these findings, as well as "[Employer's] failure to abide by this Court's order and the prolonged effect it has had on [Employee]," the court designated Dr. Kyser as the authorized treating physician and ordered Employer to provide treatment with Dr. Kyser "until [Employee] is released." We conclude the trial court erred in its analysis of the pertinent issues.

Tennessee Code Annotated section 50-6-204(a)(3)(A)(i) (2019) requires that an employer's panel of physicians "shall designate a group of three (3) or more independent reputable physicians . . . if available in the *injured employee's community* or, if not so available, in accordance with subdivision(a)(3)(B)." (Emphasis added.) Subdivision (a)(3)(B) provides as follows:

> If three (3) or more independent reputable physicians . . . are not available in the *employee's community*, the employer shall provide a list of three (3) independent reputable physicians . . . that are within a one-hundred-twenty-five-mile radius of the *employee's community of residence*.

(Emphasis added.) While we offer no opinion on whether Employer's April 3, 2019 panel was valid, we note the trial court did not apply the correct standard as stated in section 50-6-204(a)(3)(B) in reaching its determination. On the other hand, Employer did not seek relief from the court's previous order requiring that a panel be provided; it did not file a motion to alter or amend the previous order; and it did not file a new request for expedited hearing to present the more recent causation opinions expressed by Dr. Strickland. Moreover, Employer offered no proof in the expedited hearing addressing the validity of the panel beyond stipulations that "as of March 19, 2019, Employer had contacted 28 psychiatrists in an attempt to assemble a panel for [Employee] but had been unsuccessful," and that a panel "was sent to counsel for [Employee] on April 3, 2019." Furthermore, in this appeal, Employer has not assigned as error the trial court's determination that the April 3, 2019 panel was invalid, and it has not addressed the validity of the panel in its brief. Thus, we conclude Employer waived any issue as to the validity of the panel.

Turning to the trial court's decision to consider the new opinions offered by Employer from Dr. Strickland and to weigh such opinions against those previously received from Dr. Kyser, we note the general rule concerning expert opinions is that a trial court has the discretion to weigh expert opinions and rely on the opinions of one expert over those of another. *See, e.g.*, *Bass v. The Home Depot U.S.A.*, No. 2016-06-1038, 2017 TN Wrk. Comp. App. Bd. LEXIS 36, at *9 (Tenn. Work. Comp. App. Bd. May 26, 2017). Employer argues the general rule is not applicable here and that, in weighing the expert opinions, the trial court erred "by completely ignoring the statute governing . . . psychiatric benefits, [Tennessee Code Annotated section] 50-6-204(h), in choosing to credit the alleged psychiatric recommendations of Employee's IME physician, Dr. Greg Kyser."

Subsection 50-6-204(h) provides that "[a]ll psychological or psychiatric services available under subdivisions (a)(1) and (b)(1) shall be rendered only by psychologists or psychiatrists and *shall be limited to those ordered upon the referral of physicians authorized under subdivision (a)(3)*." Tenn. Code Ann. § 50-6-204(h) (emphasis added). Employer argues that the trial court erred "[i]n completely omitting a proper analysis of psychiatric care under § 204(h)," which Employer contends prohibits either the panel sought by Employee or the designation of Dr. Kyser to provide psychiatric care. Employer contends this statute "explicitly limits an employee to psychiatric services ordered by referral of a treating physician chosen from a panel." Asserting that the statute in question presents "a threshold matter that must be met before any weighing [of evidence] can be [accomplished]," Employer concludes that "only the opinions of authorized treating physicians are to be considered." According to Employer, since it is undisputed that Dr. Kyser was not an authorized treating physician, "the inquiry as to the trial court's error should end here per the requirements of [section 50-6-]204(h)."

The trial court did not address section 50-6-204(h) in its order. In general, we refrain from addressing the applicability or effect of a statute relied upon by a party in the trial court in circumstances where the trial court has not first addressed the issue. *See, e.g.*, *Pool v. Jarmon D&Q Transport*, No. 2015-06-0510, 2016 TN Wrk. Comp. App. Bd. LEXIS 1 (Tenn. Workers' Comp. App. Bd. Jan. 4, 2016). Thus, we offer no opinion regarding Employer's arguments with respect to the applicability or effect of this statute under the facts and circumstances presented. Instead, we vacate the trial court's designation of Dr. Kyser as the authorized treating psychiatrist and remand the case for the trial court to address the applicability and impact, if any, of section 50-6-204(h) on the court's analysis of these issues.[4]

Finally, we conclude Employer's appeal was not frivolous, and we decline to award Employee attorneys' fees or costs in responding to this appeal.

---

[4] Given our resolution of this issue, it is unnecessary for us to address whether the evidence of Dr. Kyser's opinions was properly before the court in the context of this expedited hearing.

## Conclusion

For the foregoing reasons, we vacate the trial court's designation of Dr. Kyser as the authorized physician, affirm the remainder of the court's order, and remand the case for the trial court to address the matters identified above consistent with this opinion. Costs on appeal are taxed to Employer.



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Kelly Gautreaux | ) | Docket No. 2018-06-0366 |
| | ) | |
| v. | ) | State File No. 11346-2017 |
| | ) | |
| Hermitage Hall, et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Joshua D. Baker, Judge | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 23rd day of January, 2020.

| Name | Certified Mail | First Class Mail | Via Fax | Via Email | Sent to: |
|---|---|---|---|---|---|
| Zachary D. Wiley<br>Ranita Forrest | | | | X | zwiley@forthepeople.com<br>rforrest@forthepeople.com |
| Chris Brooks<br>Gregory Fuller | | | | X | crbrooks@mijs.com<br>ghfuller@mijs.com |
| Joshua D. Baker, Judge | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | X | penny.patterson-shrum@tn.gov |

*Olivia Yearwood*

Olivia Yearwood
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: WCAppeals.Clerk@tn.gov